UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK HITSMAN,

               Plaintiff,

v.

SOLACE GROUP LLC,
AMRAK SOLUTIONS GROUP LLC, and
VIOLET M. KIMBLE,

               Defendants.

_____/

Case No. 1:20-cv-902

HON. ROBERT J. JONKER

## FIRST AMENDED COMPLAINT

**I.**    **Introduction**

1.    Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit account and debt. Defendants are debt collectors and credit identity thieves who acquired plaintiff's stolen personal and financial information along with the counterfeit account, and then contacted and falsely threatened plaintiff with litigation, prosecution and other adverse consequences unless plaintiff paid defendants money to satisfy the non-existent debt.

2.    Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq*., Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq*.

3.    Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired and uses false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay alleged loans. This scheme, and similar ones operated by seemingly countless entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with prosecution, litigation, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime. Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect any debt from the consumer. Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed. Often times, the account and related, alleged debt are counterfeit. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

4.     These unlawful debt collection schemes remain epidemic. On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities

against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.     Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

6.     The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

7.     Defendants have knowingly and unlawfully acquired, transferred, shared among themselves and used, plaintiff's stolen personal and financial information, in furtherance of their

joint enterprise to contact and coerce the payment of money from plaintiff through false threats of prosecution and litigation, claiming money due on a fake debt, in violation of the FDCPA, DPPA and Michigan law.

## II.     Jurisdiction

8.     The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. The Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

## III.     Parties

9.     Plaintiff Jack Hitsman is an adult, natural person residing in Montcalm County, Michigan. Mr. Hitsman is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Hitsman is a "person" as the term is defined and used in the DPPA. Mr. Hitsman is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

10.     Defendant Solace Group LLC ("SG") is an active Georgia limited liability company, formed March 5, 2020. According to the SG Articles of Organization, the "Principal Office Address" for SG is 5530 Wind River Lane, Powder Springs, Georgia 30127, which also is the residence of defendant Violet M. Kimble. The registered agent for SG is Violet M. Kimble, 5530 Wind River Lane, Powder Springs, Georgia 30127. SG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. SG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. SG is a "debt collector" as the term is defined and used in the FDCPA. SG is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, SG is a

"collection agency" and "licensee" as the terms are defined and used in the MOC.

11. On March 15, 2020, defendants registered through Wix.Com Ltd., the internet domain www.Solace1.com. The domain links to an active website that describes SG as provider of accounting services to small businesses. The website states that SG does business at an undisclosed location in the Atlanta, Georgia metropolitan area. The websites provides a contact telephone number 470-485-6911 and email address totalsolace@gmail.com.

12. SG through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

13 Defendant Amrak Solutions Group LLC ("ASG") is an active Georgia limited liability company, formed August 11, 2020. According to the ASG Articles of Organization, the "Principal Office Address" for ASG is 5530 Wind River Lane, Powder Springs, Georgia 30127, which also is the residence of defendant Violet M. Kimble. The registered agent for ASG is Violet M. Kimble, 5530 Wind River Lane, Powder Springs, Georgia 30127. According to information provided Ms. Kimble and ASG to the Georgia Corporation Division, ASG is a "Collection Agency." ASG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ASG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ASG is a "debt collector" as the term is defined and used in the FDCPA. ASG is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, ASG is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

14. ASG through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

15. Defendant Violet M. Kimble is a natural person, age 46, purportedly residing at

5530 Wind River Lane, Powder Springs, Georgia 30127-9528. Ms. Kimble is an owner, officer, member, manager, employee and agent of defendants Solace Group LLC and Amrak Solutions Group LLC. Ms. Kimble uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Kimble regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Kimble is a "debt collector" as the term is defined and used in the FDCPA. Ms. Kimble is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Kimble is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

16.     Ms. Kimble (a) created the collection policies and procedures used by SG and ASG, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of SG and ASG, (c) oversaw the application of the collection policies and procedures used by SG and ASG, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by SG and ASG, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Hitsman as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by SG and ASG, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by SG and ASG, and their employees and agents, in attempts to collect an alleged debt from Mr. Hitsman as stated in this complaint.

17.     Ms. Kimble directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

18.     Defendants own, control and use a Merchant Account established in the name of

6

"Solace Group LLC," located in Powder Springs, Georgia, to receive credit card and debit card payments from their victims. Money deposited in the Merchant Account is shared among and distributed to the defendants named in this lawsuit, their employees and agents, and perhaps others. The application that was filed by defendants with the Acquiring Bank and Payment Processor or ISO to create the Merchant Account, as well as the related monthly account statements and other account records, will need to be obtained from the Acquiring Bank and Payment Processor or ISO via subpoena in discovery, so that plaintiff can identify the other entities that receive distributions of money from the Merchant Account and are involved in defendants' debt collection scam.

19.     The use of the Merchant Account by defendants, and their employees and agents, to violate multiple federal and state laws, and to commit fraud and extortion, violates the terms of the contracts between defendants and the Acquiring Bank, Visa, MasterCard, and defendants payment processor, and disqualifies defendants from having a Merchant Account.

20.     Non-party Authorize.net LLC ("Authorize.net") is a Delaware limited liability company. Authorize.net is a payment gateway service provider, through which merchants accept credit card and electronic check payments via the internet. Authorize.net provides payment processing services to hundreds of thousands of online business around the world. Authorize.net is owned by CyberSource Corporation, which is owned by Visa Inc.  According to the Authorize.net Privacy Policy as stated on its internet website, www.authorize.net, Authorize.net collects "Personal Information" any time its payment processing services are used, including but not limited to: "Consumer Name; Contact information (such as email address, phone number, and mailing address); Order and payment information; IP address and information about the device used to access the Services; How and which Services are used; Merchant and merchant

account information, including account information we may gather from third party sources; and Information provided to us through means such as social media or when you contact us through our website." The website also states that it shares Personal Information with third parties as necessary "To comply with law or other legal obligations such as responding to subpoenas . . . ."

21.     Defendants use Authorize.net LLC as a payment gateway service provider through which defendants' Merchant Account receives payments from the consumers defendants have victimized with defendants' credit identity theft and debt collection scam. Information regarding defendants' scam will need to be obtained via subpoena form Authorize.net in discovery. Defendants's use of the services of Authorize.net to conduct defendants' scam violates the terms of defendants' contract with Authorize.net and disqualifies defendants from access to the banking system.

22.     Defendants and their employees and agents, in efforts to conceal their true identities and location, use multiple email addresses to conduct their unlawful debt collection scam, including: totalsolace@gmail.com and violetkimble@yahoo.com.

23.     Defendants and their employees and agents, in efforts to conceal their true identities and location, have conducted their unlawful debt collection scam using multiple, unregistered names, including: Mediation Resolution Group; MNR Group; M&R Group; Mediations Department; and Payment Processing.

24.     Defendants and their employees and agents, in efforts to conceal their true identities and location, use multiple aliases to conduct their unlawful debt collection scam, including: Carmen Gonzalez; Investigator Artis; Attorney Robert Nelson; and Octavia.

25.     Defendants and their employees and agents have conducted their unlawful debt

collection scam using multiple telephone numbers, including: 404-806-0407; 470-485-6911; 470-795-8157; 888-493-6102; and 888-919-6168. Calls made during non-business hours to telephone numbers 404-806-0407 and 888-493-6102 are answered with the following pre-recorded greeting: "If you have reached this recording, we are on the phone with another client. Please leave your name, Case Number, and best contact number, and we will return your call at our earliest convenience."

26.    Defendants and their employees and agents, in efforts to conceal their true identities and location, have conducted their unlawful debt collection scam use the mailing address, P.O. Box 32204, Atlanta, Georgia 30324.

27.    Plaintiff is proceeding against defendants collectively under a common enterprise theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-

1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

28.     All defendants, along with other companies, employees and agents to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

29.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

30.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.  Facts

31.     On or about January 31, 2006, plaintiff Jack Hitsman obtained a loan from CitiFinancial Auto ("CitiFinancial") to purchase a motor vehicle for personal, family and household purposes. CitiFinancial assigned the account the number 1022627729. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA, MRCPA and MOC.

32.     In 2010, Mr. Hitsman became seriously ill, unable to work, and disabled. Mr. Hitsman fell behind on his monthly payments to CitiFinancial. Mr. Hitsman's account went into default. Mr. Hitsman has not made a payment on the account since 2010.

33.     On or about August 15, 2010, CitiFinancial repossessed the vehicle from Mr. Hitsman.

34.     By letter dated September 6, 2010, CitiFinancial notified Mr. Hitsman that his delinquent account and related debt had been assigned to Santander Consumer USA Inc. ("Santander"). The letter also stated that Santander had assigned the account a new account number, 2615411, also sometimes known as account number 30000126154111000.

35.     In September 2010, Santander sold the vehicle at auction for approximately

$8,600.00. Santander applied the proceeds to the account balance of approximately $13,000.00, leaving Mr. Hitsman owing Santander an alleged deficiency balance of $5,474.87.

36.     However, Santander failed to send Mr. Hitsman a timely and proper notice of intended sale of the vehicle prior to the sale of the motor vehicle as required by the Uniform Commercial Code as enacted in Michigan. MCL 440.9610; MCL 440.9611; MCL 440.9612; MCL 440.9613; and MCL 440.9614.

37.     Because Santander failed to comply with the notice requirements of MCL 440.9613 and MCL 440.9614, Santander became "absolutely barred" from collecting any deficiency balance related to the sale of the repossessed motor vehicle. *State Bank of Standish v. Keysor,* 166 Mich App 93 (1988); *Honor State Bank v. Timber Wolf Constr. Co.,* 151 Mich App 681 (1986). By operation of law, any debt that Mr. Hitsman may have owed on the vehicle was satisfied in full by the money received by Santander for the sale of the vehicle, leaving Mr. Hitsman with an account balance of zero.

38.     Regardless, and apart from Santander's violations of the UCC, any claim that Santander may have had against Mr. Hitsman in connection with the account became time-barred and judicially unenforceable in 2014 by operation of the four-year statute of limitations found in the Michigan UCC, MCL 440.2725. *See Harden v. Autovest, L.L.C.,* No. 1:15-cv-34, 2015 WL 4583276, *2-5 (W.D. Mich. July 29, 2015).

39.     Mr. Hitsman disputes owing any money to CitiFinancial, Santander, or anyone else in connection with the account.

40.     Mr. Hitsman expressly refuses to pay any money to CitiFinancial, Santander, or anyone else in connection with the account.

41.     In or about 2014, Santander offered to sell more than 100,000 delinquent automobile loan accounts. As part of that process, Santander provided substantial information regarding the accounts to multiple, prospective purchasers and brokers for evaluation. The prospective purchasers and brokers signed non-disclosure agreements for all accounts that were not purchased from Santander.

42.     Between July 25, 2014 and June 9, 2015, Santander sold more than 100,000 delinquent automobile loan accounts to non-party Cascade Capital, LLC ("Cascade"), a California limited liability company. Mr. Hitsman's account was included in the sale from Santander to Cascade.

43.     Unbeknownst to Cascade, one or more of the prospective purchasers or brokers that had received and reviewed account information from Santander, retained and stole the information for more than 100,000 Santander accounts, including information regarding Mr. Hitsman's account.

44.     Thereafter, non-party D'Juan Dale Leverette obtained the stolen information for more than 100,000 Santander accounts, including the stolen information regarding Mr. Hitsman's account.

45.     In or about May 2017, Mr. Leverette provided Mr. Hitsman's stolen account information to an entity named Riley, Allen & Associate's LLC ("RAA"), located in Charlotte, North Carolina.

46.     In May 2017, an employee and agent of RAA communicated by telephone with Mr. Hitsman and his wife, Debra Hitsman, regarding the account. The RAA employees stated that a company named "Constar" had purchased the account, that Mr. Hitsman owed a balance of

$7,232.60, and that RAA had been hired to collect the money from Mr. Hitsman. The RAA employees falsely stated that a civil lawsuit had been filed against Mr. Hitsman, and that if Mr. Hitsman did not immediately make arrangements to pay $2,169.00, Mr. Hitsman was going to be arrested by the sheriff and prosecuted. Hearing that, Mrs. Hitsman made a payment to RAA, which was processed by an entity named Regional Processing Services LLC ("RPS").

47.     In May 2017, Mr. Hitsman's attorney contacted Cascade regarding the account. Cascade claimed that: (a) Cascade was the lawful owner of Mr. Hitsman's account; (b) RAA was not authorized to collect the account; (c) RAA had somehow acquired a large portfolio of stolen CitiFinancial/Santander accounts, including Mr. Hitsman's account; and (d) multiple consumers had contacted Cascade and complained that RAA was falsely threatening the consumers with arrest, prosecution and litigation unless the consumers paid money to RAA based on stolen accounts and stolen consumer information that was purchased by and belonged to Cascade.

48.     On or about June 2, 2017, Mr. Hitsman and Mrs. Hitsman, RAA and RPS, all through counsel, reached a confidential settlement and resolved their dispute.

49.     On August 8, 2017, Cascade Capital, LLC filed a lawsuit against DRS Processing LLC ("DRS"), dba Miller Stark Klein & Associates, in the United States District Court for the Western District of North Carolina, Charlotte Division, Case No. 3:17-cv-470, alleging that DRS had obtained stolen information for more than 100,000 delinquent automobile loan accounts that had been purchased by Cascade from Santander, and that DRS had unlawfully used the stolen information to contact and threaten consumers with litigation and prosecution unless the consumers paid money to DRS. According to documents filed in the lawsuit by DRS and its owner, Darryl Miller, the stolen information was contained in thirty-one portfolios purchased

14

during the course of 2017 by DRS from D'Juan Dale Leverette. DRS and Mr. Miller paid for the

stolen information by wiring more than $200,000.00 to an account owned by Mr. Leverette.

50.    In February 2018, Mr. Hitsman and his family again began to receive threatening

telephone calls regarding the Citifinancial/Santander account.

51.    On February 27, 2018, employees and agents of an entity named United Merchant

Asset Recovery, LLC ("UMAR") contacted Mr. Hitsman and his wife by telephone and falsely

stated that (a) UMAR had been "retained" by Santander to collect money from Mr. Hitsman in

connection with his account; (b) Mr. Hitsman owed more than $5,000.00; (c) a "team of

attorneys" was "managing the litigation" to collect money from Mr. Hitsman; (d) a lawsuit had

already been filed by Santander against Mr. Hitsman to collect the debt; (e) if Mr. Hitsman paid

money, documents would be filed that day to stop the lawsuit; (f) Mr. Hitsman was "guilty" of

breach of contract and fraud; (g) if Mr. Hitsman did not pay money that day, Mr. Hitsman would

have to appear in court and the judge would rule that Mr. Hitsman owed thousands of dollars

more in interest, court costs and attorney fees; and (g) a lien was going to be placed on Mr.

Hitsman's home and other assets, and his wages were going to be garnished.

52.    On February 4, 2019, Mr. Hitsman and his wife filed a lawsuit against UMAR and

others in the United States District Court for the Western District of Michigan, Case No. 1:19-cv-

82, alleging that UMAR had obtained and used Mr. Hitsman's stolen Santander account and

stolen personal and financial information, to contact and falsely threaten Mr. Hitsman with

litigation and prosecution unless Mr. Hitsman paid money to UMAR.

53.    On or about February 27, 2019, Mr. Hitsman and Mrs. Hitsman, and UMAR and

the other defendants, reached a confidential settlement, resolved their dispute, and the lawsuit

was dismissed.

54.     According to UMAR and its owners, Mr. Hitsman's stolen account information and stolen personal and financial information was obtained by UMAR in a portfolio of stolen Santander accounts that UMAR purchased in or about January of 2018 from "D'Juan Leverette, 11623 Sweet Rose Court, Charlotte, North Carolina 28269, telephone number 770-906-4652." According to UMAR and its owners, at the request of Mr. Leverette, UMAR paid defendants for the portfolio of stolen Santander accounts by wiring funds (Wire Transfer No. 121000248) to a Wells Fargo, N.A. business account (No. 114827xxxx), maintained for the benefit of all defendants, in the name of "Precious Stephens, Precious Health and Wellness Spa, LLC, 1015 Oakenshaw Street, Fort Mill, South Carolina 29715."

55.     On March 18, 2019, Mr. Hitsman filed a lawsuit against D'Juan Dale Leverette and others in the United States District Court for the Western District of Michigan, Case No. 1:19-cv-207, alleging that the defendants had obtained and used Mr. Hitsman's stolen Santander account and stolen personal and financial information, in a scheme to contact and falsely threaten Mr. Hitsman with litigation and prosecution unless Mr. Hitsman paid money to defendants and others.

56.     On August 27, 2019, the Court entered default judgment in favor of Mr. Hitsman and against defendants D'Juan Dale Leverette, Precious Grace Kelly, Jonathan Joel Dimusto, Manuel Menal Strong, Atlantic Mediation Group, LLC, Atlantic Solutions Group, LLC, and Precious Health and Wellness Spa, LLC for violating the FDCPA, DPPA and Michigan law. On November 18, 2019, the Court granted Mr. Hitsman's motion for costs and attorney fees, awarding Mr. Hitsman judgment in the total amount of $18.998.84.

57.     In February 2020, Mr. Hitsman and his family again received calls from debt collectors and credit identity thieves regarding the Citifinancial/Santander account, again threatening Mr. Hitsman with prosecution, litigation and other adverse consequences, unless Mr. Hitsman paid money to the callers.

58.     On April 13, 2020, Mr. Hitsman filed a lawsuit in the United States District Court for the Western District of Michigan, Case No. 1:20-cv-319, *Jack Hitsman v. Fairview Mediation Group Inc, et al.*, Case No. 1:20-cv-319, alleging that the callers had obtained and used Mr. Hitsman's stolen Santander account and stolen personal and financial information, to contact and falsely threaten Mr. Hitsman with litigation, prosecution and other adverse consequences, unless Mr. Hitsman paid money to the defendants.

59.     On or about May 26, 2020, Mr. Hitsman and the defendants in Case No. 1:20-cv-319 reached a confidential settlement, resolved their dispute, and the lawsuit was dismissed.

60.     In July 2020, Mr. Hitsman and his family again received calls from debt collectors and credit identity thieves regarding the Citifinancial/Santander account, again threatening Mr. Hitsman with prosecution, litigation and other adverse consequences, unless Mr. Hitsman paid money to the callers.

61.     On July 22, 2020, Mr. Hitsman filed a lawsuit against Liberty Solutions & Associates, LLC, LSA Processing System, LLC, National Landmark Logistics, LLC, Jean Pierre Cellent, Eric David Dennison and James Cle Dennison, and others, in the United States District Court for the Western District of Michigan, Case No. 1:20-cv-677, alleging that the defendants had obtained and used Mr. Hitsman's stolen Santander account and stolen personal and financial information, to contact and falsely threaten Mr. Hitsman with litigation and prosecution unless

17

Mr. Hitsman paid money to the defendants.

62.     Unbeknownst to Mr. Hitsman, on July 13, 2020, the Federal Trade Commission

a lawsuit (under seal) against Liberty Solutions & Associates, LLC, LSA Processing System,

LLC, National Landmark Logistics, LLC, Jean Pierre Cellent, Eric David Dennison and James

Cle Dennison, and others, in the United States District Court for the District of South Carolina,

Rock Hill Division, Case No. 0:20-cv-02592-JMC, pursuant to which the assets of the named

defendants were seized and placed in receivership. The FTC action alleges that over a period of

several years, the defendants cheated consumers out of $13.7 million, using the same credit

identity theft and debt collection scam that is described in this complaint. The FTC action

remains ongoing.

63.     In September 2020, Mr. Hitsman and his family again received calls from debt

collectors and credit identity thieves regarding the Citifinancial/Santander account, again

threatening Mr. Hitsman with prosecution, litigation and other adverse consequences, unless Mr.

Hitsman paid money to the callers.

64.     The defendants named in this lawsuit are the most recent credit identity thieves

and debt collection scam operators to unlawfully acquire and use Mr. Hitsman's stolen personal

information to contact Mr. Hitsman and his family and falsely threaten Mr. Hitsman with

prosecution, litigation and other adverse consequences, in efforts to extort the payment of money

from Mr. Hitsman.

65.     On September 10, 2020, defendants placed a call from telephone number 888-

493-6102 to Mr. Hitsman's cellular telephone and left the following computer-generated and pre-

recorded message on Mr. Hitsman's voice mail: "This message is intended for Jack Hitsman. If

you are not Jack Hitsman, please [unintelligible]. This is Investigator Artis. I have a very urgent

legal matter connected with your Social Security Number that needs to be rectified immediately.

Press 1 to be connected now, or call us back at 888-493-6102 by close of business day, today."

66.     On or about September 11, 2020, defendants placed a call from telephone number

888-493-6102 to Mr. Hitsman's adult daughter's cellular telephone and left the following

computer-generated and pre-recorded message on Mr. Hitsman's daughter's voice mail: "This

message is intended for Jack Hitsman. If you are not Jack Hitsman, please [unintelligible]. This

is Investigator Artis. I have a very urgent legal matter connected with your Social Security

Number that needs to be rectified immediately. Press 1 to be connected now, or call us back at

888-493-6102 by close of business day, today."

67.     On September 11, 2020, Mr. Hitsman's wife, Deborah Hitsman, placed a return

call to defendants at telephone number 888-493-6102. In the ensuing conversation, defendants'

employee and agent, who identified herself as "Carmen Gonzalez," at "470-795-8157, extension

412," made the following representations:

a)      "I work on behalf of Attorney Robert Nelson."

b)      Mr. Hitsman owed $7,232.60 to "Santander" for an unpaid auto loan

        obtained by Mr. Hitsman in 2006.

c)      Mr. Hitsman qualified for a "hardship settlement" in the amount of

        $1,030.00.

d)      Mr. Hitsman's "Case Number" is "2020-375923."

e)      "[Mr. Hitsman's] facing two complaints here. The first one is a breach of

        contract. The second is the intent to defraud a financial institution. There

19

is one witness on this case, which is Santander. This is in reference to a Ford Econoline. It looks like he left an outstanding balance on this account and they're looking to settle it. They actually have him on the Court Docket for September the 16th. They're looking to put a lien on [the property and residential address of Mr. Hitsman and Mrs. Hitsman]. And so, I'm the actual mediator on this case and my job is to see if we can get it settled outside of court."

68.    On September 11, 2020, in response to defendants' false threats of litigation, prosecution and other adverse consequences, and solely for the purpose identifying and suing the entities who had acquired and used Mr. Hitsman's stolen personal and financial information to contact and falsely threaten Mr. Hitsman and his family with litigation, prosecution and other adverse consequences, Mr. Hitsman authorized a debit card payment to defendants in the amount of $75.00.

69.    On September 11, 2020, defendants caused Mr. Hitsman's debit card payment of $75.00 to be transferred to defendants' Merchant Account established in the name "Solace Group LLC," located in Powder Springs, Georgia. According to the debit card's issuing bank, the payment posted to defendants' Merchant Account on September 14, 2020.

70.    On September 11, 2020, defendants sent an email from totalsolace@gmail.com to Mr. Hitsman with an attached one-page authorization form for Mr. Hitsman to sign electronically and thereby authorize the payment of money from Mr. Hitsman to defendants. The authorization form was on the letterhead of "Payment Processing, Po Box 32204, Atlanta, Ga 30324." The authorization form referred to "ACCOUNT NO: 2020-375923; CLIENT: Merg 9.2020." The

authorization form instructed Mr. Hitsman to direct any questions to a "Claims Specialist by calling 404-806-0407 or Toll Free (888) 493-6102." The authorization form falsely stated that Mr. Hitsman owed a balance of $1,000.00 in connection with the alleged debt. A copy of the email and authorization form are attached to this complaint as Exhibit A.

71.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

72.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

73.     Defendants and their employees and agents falsely represented that Mr. Hitsman owed money in connection with a counterfeit account.

74.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Hitsman's alleged debt.

75.     Defendants and their employees and agents falsely represented that Mr. Hitsman owed a debt that is not owed.

76.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

77.     Defendants and their employees and agents failed to provide the identity of the entity to whom the alleged debt is owed.

21

78.     Defendants and their employees and agents falsely represented and falsely implied that defendants are mediators.

79.     Defendants and their employees and agents falsely represented and falsely implied that Santander was defendants' client.

80.     Defendants and their employees and agents falsely represented and falsely implied that Santander had retained defendants to collect the alleged debt from Mr. Hitsman.

81.     Defendants and their employees and agents falsely represented that they are lawyers and a law firm.

82.     Defendants and their employees and agents falsely represented that work for a lawyer named Robert Nelson.

83.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Hitsman's personal and financial information, in an effort to coerce the payment of money from Mr. Hitsman.

84.     Defendants and their employees and agents wrongfully obtained and wrongfully used information regarding Mr. Hitsman's relatives, in an effort to coerce the payment of money from Mr. Hitsman.

85.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

86.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

87.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Hitsman to collect the alleged debt.

22

88.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Hitsman to collect the alleged debt.

89.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit, Case No. 2020-375923, already had been filed against Mr. Hitsman to collect the alleged debt.

90.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Hitsman was scheduled on the Court Docket to appear in court on September 16, 2020.

91.     Defendants and their employees and agents falsely represented and falsely implied that Santander was listed as a "witness" to appear against Mr. Hitsman in a filed court case.

92.     Defendants and their employees and agents falsely represented and falsely implied that a lien was going to be placed against his residential property.

93.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Hitsman to collect the alleged debt.

94.     Defendants and their employees and agents falsely represented that Mr. Hitsman had committed fraud.

95.     Defendants and their employees and agents falsely represented that a complaint had been filed against Mr. Hitsman for "intent to defraud a financial institution."

96.     Defendants and their employees and agents falsely represented and falsely implied that criminal charges had been filed against Mr. Hitsman for "intent to defraud a financial institution."

97.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Hitsman had committed a crime.

23

98.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Hitsman was going to be arrested and prosecuted unless Mr. Hitsman paid money to defendants.

99.     Defendants and their employees and agents wrongfully threatened to file a lawsuit against Mr. Hitsman to collect a time-barred debt.

100.    Defendants did not intend to file a lawsuit against Mr. Hitsman in any court in efforts to collect the alleged debt.

101.    No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

102.    The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

103.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

104.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

105.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

106.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

107.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

108.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

109.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

110.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

111.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

112.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

113.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

114.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

115.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

116.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

117.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

118.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

119.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

120.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

121.    Defendants and their employees and agents failed to timely send to Mr. Hitsman a notice containing the information required by 15 U.S.C. § 1692g(a).

26

122. The FDCPA states that a debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

123. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

124. A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt. 15 U.S.C. § 1692b(2).

125. Defendants violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b), by placing the above-described calls to Mr. Hitsman's relatives, including Mr. Hitsman's daughter, and other third parties, and leaving the above-quoted message on voice mail.

126. The FDCPA states that if a debt collector knows the consumer is represented by an attorney with respect to a debt and has knowledge of, or can readily ascertain, the attorney's name and address, the debt collector may not communicate directly with the consumer in connection with the collection of the debt. 15 U.S.C. § 1692c(a)(2).

127. Defendants violated the FDCPA, by continuing to communicate directly with Mr. Hitsman after receiving emails and a fax transmission from Mr. Hitsman's attorney, demanding that defendants cease all direct communications with Mr. Hitsman.

128. Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

129. Defendants and their employees, managers, owners, agents, affiliates and co-

conspirators each have intentionally and wilfully violated the FDCPA.

130.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

131.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

132.    In connection with efforts to collect an alleged debt from Mr. Hitsman, defendants obtained and used personal information regarding Mr. Hitsman and his relatives from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

133.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

134. The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

135. The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

136. The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

137. The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

138. The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

139. Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Hitsman and his relatives.

140.    Defendants used the database to obtain, disclose and use personal information regarding Mr. Hitsman and his relatives.

141.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Hitsman and his relatives that was derived from motor vehicle records.

142.    Alternatively, the entity that obtained Mr. Hitsman's and his relatives' personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Hitsman and his relatives that was derived from motor vehicle records.

143.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

144.    Defendants knowingly obtained, disclosed and used Mr. Hitsman's and his relatives' personal information, obtained from motor vehicle records, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

145.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Hitsman's or his relatives' personal information obtained from the database.

146.    No defendant had Mr. Hitsman's or his relatives' consent, permission, authorization or waiver to obtain Mr. Hitsman's or his relatives' personal information from the database.

147.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

148.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

149.    Defendants intentionally and wilfully violated the DPPA.

150.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

151.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

**V.    Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

152.    Plaintiff incorporates the foregoing paragraphs by reference.

153.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692b;

b)      Defendants violated 15 U.S.C. § 1692c;

c)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

d)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading

representations and means in connection with the collection or attempted

collection of a debt;

e)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means

to collect or attempt to collect a debt from plaintiff; and

f)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

154.    Plaintiff incorporates the foregoing paragraphs by reference.

155.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages, but not less than liquidated damages in the amount of $2,500.00,

pursuant to 18 U.S.C. § 2724(b)(1);

b)    Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)    Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)    An injunction prohibiting defendants from further obtaining or using plaintiff's

personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)    An order requiring defendants to provide plaintiff with the original and all copies

of any and all documents of any kind that contain any of plaintiff's personal

information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)     An injunction prohibiting defendants from disseminating plaintiff's personal

information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

### Count 3 – Michigan Regulation of Collection Practices Act

156.    Plaintiff incorporates the foregoing paragraphs by reference.

157.    Each defendant has violated the MRCPA.  Each defendant's violations of the

MRCPA include, but are not necessarily limited to, the following:

a)     Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)     Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)     Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

d)     Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or

threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the

nonpayment of a debt will result in the debtor's arrest or imprisonment, or the

seizure, garnishment, or sale of the debtor's property;

e)     Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or

abusive method to collect a debt;

f)     Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

g)     Defendants violated M.C.L. § 445.258 by communicating with plaintiff's

daughter.

33

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

158.    Plaintiff incorporates the foregoing paragraphs by reference.

159.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

34

    f)       Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

          designed to prevent a violation by an employee; and

    h)       Defendants violated M.C.L. § 339.919 by communicating with plaintiff's brother.

**Wherefore,** plaintiff seeks judgment against defendants for:

    a)       Actual damages pursuant to M.C.L. § 339.916;

    b)       Treble the actual damages pursuant to M.C.L. § 339.916;

    c)       Statutory damages pursuant to M.C.L. § 339.916;

    d)       Equitable relief pursuant to M.C.L. § 339.916; and

    e)       Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

Dated: October 16, 2020               /s/ Phillip C. Rogers
                                     Phillip C. Rogers (P34356)
                                     Attorney for Plaintiff
                                     6140 28th Street SE, Suite 115
                                     Grand Rapids, Michigan 49546-6938
                                     (616) 776-1176
                                     ConsumerLawyer@aol.com